IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MCGARRY & MCGARRY, LLC, | ) | |
|  | ) | |
| Plaintiff, | ) | Case No.  16 CV 5978 |
|  | ) | |
| v. | ) | |
|  | ) | |
| RABOBANK, N.A., | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |
|  | ) | |

COMPLAINT

Plaintiff McGarry & McGarry, LLC ("McGarry"), by its undersigned attorney, on behalf of itself and those similarly situated, for its complaint against defendant Rabobank, N.A. ("Rabobank"), alleges:

<u>Nature of this Action</u>

1.      McGarry is bringing this action, on behalf of itself and those similarly situated, to recover damages resulting from the anticompetitive effects of contracts concerning bankruptcy services that Rabobank has entered into, or orchestrated, in violation of the Bank Company Holding Act, 12 U.S.C. § 1972.

<u>Jurisdiction and Venue</u>

2.      The Court has subject matter jurisdiction over the claim asserted in this action pursuant to 28 U.S.C. § 1331, because it arises under 12 U.S.C. §§ 1972 and 1975.

3.      This Court has personal jurisdiction over Rabobank pursuant to 735 ILCS 5/2-209, because the claim arises out of Rabobank's transaction of business within this State.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Rabobank is subject to personal jurisdiction in this District.

<u>The Parties</u>

5.      McGarry is a limited liability company organized and existing under the laws of the State of Illinois, with its place of business in Chicago, Illinois.

6.      Rabobank is a corporation organized and existing under the laws of the United States, with its principal place of business in Roseville, California.

<u>Background of this Action</u>

7.      By operation of law, the filing of a petition under Chapter 7 of the Bankruptcy Code creates a bankruptcy estate. The bankruptcy estate, in general terms, consists of the property of the debtor at the time of the filing of the petition. Upon the filing of such a petition, the Office of the United States Trustee, a Division of the United States Department of Justice ("U.S. Trustee") appoints a Chapter 7 trustee to administer the bankruptcy estate.  Chapter 7 trustees and other bankruptcy fiduciaries ("Bankruptcy Trustees") have obligations to, among other things, make certain reports concerning the bankruptcy estate to the U.S. Trustee and to the Bankruptcy Court.

A.      <u>The Business of Providing Bankruptcy Banking Services</u>

8.      To administer the bankruptcy estates, Bankruptcy Trustees require banking services to, among other things, hold the money of the bankruptcy estates ("Bankruptcy Banking Services").

2

9.     Bankruptcy Banking Services are a distinct market from other banking services. To provide Bankruptcy Banking Services, a bank must be approved by the U.S. Trustee after meeting, agreeing to meet and/or agreeing to follow certain regulatory guidelines with respect to the Bankruptcy Banking Services.

10.     The market for Bankruptcy Banking Services is highly concentrated. Upon information and belief, measured by the number of Bankruptcy Trustees, Rabobank has a more than 50 percent share of the market for Bankruptcy Banking Services, and only a few other banks service an additional 40 percent of that market.

B.     The Business of Providing Bankruptcy Support Services

11.     At all relevant times, Bankruptcy Management Solutions, Inc. ("BMS") has been engaged in the business of providing support services, including software services ("Support Services"), to assist Bankruptcy Trustees in meeting their reporting and other obligations.

12.     Upon information and belief, before 2000, BMS developed software to facilitate Bankruptcy Trustees in meeting their reporting and other obligations ("Chapter 7 Software"). Upon information and belief, BMS secured copyright protection in this Chapter 7 Software, exercised reasonable precautions to insure the confidentiality of the source code for the Chapter 7 Software, and updated the Chapter 7 Software over time.

13.     Upon information and belief, the Chapter 7 Software gave BMS market power in selling Support Services to Bankruptcy Trustees.

14.     While there is no statute or regulation requiring Bankruptcy Trustees to use Support Services, upon information and belief, the U.S. Trustee encourages the

use of Support Services and the vast majority of Bankruptcy Trustees use Support Services.

15.     BMS has limited competition in the national market for Support Services. Upon information and belief, as measured by the number of Bankruptcy Trustees, BMS has, and at all relevant times has had, more than a 50 percent share of the national market for Support Services. Upon information and belief, as measured by the number of Bankruptcy Trustees, the primary competitor of BMS in the market for Support Services is, and at all relevant times has been, Epiq Systems, Inc. ("Epiq"). Upon information and belief, Epiq has approximately a 40 percent share of the national market for Support Services.

C.      The Contract Between Rabobank and BMS.

16.     On or about September 27, 2012, Rabobank and BMS entered into a contract that contained confidential terms.

17.     Upon information and belief, this confidential contract between BMS and Rabobank contained at least three significant promises.

18.     First, BMS promised to maintain and/or enter into contracts with Bankruptcy Trustees for Support Services, that would:

        (a)     require the Bankruptcy Trustees to deposit with Rabobank all, or substantially all, of the funds of bankruptcy estates for which the Bankruptcy Trustees used the Support Services of BMS; and

        (b)     allow Rabobank to automatically withdraw, without any approval of the Bankruptcy Court or notice to creditors, from each of the accounts of the Bankruptcy Trustees a monthly fee based upon a percentage of the funds in each account at Rabobank.

4

19.     Second, Rabobank promised that it would endeavor to enter into contracts with those Bankruptcy Trustees that would allow Rabobank to automatically withdraw, without any approval of the Bankruptcy Court or notice to creditors, that monthly fee from each account of the Bankruptcy Trustees.

20.     Third, Rabobank promised to pay BMS a portion of the monthly fee Rabobank withdrew from the account of the Bankruptcy Trustees, and/or a fee for arranging for the deposits of the funds of the bankruptcy estates at Rabobank.

D.      The Contracts of Rabobank and BMS with Eugene Crane.

21.     Upon information and belief, on or before April 15, 2014, BMS entered into a contract with Eugene Crane, Esq. ("Crane"). Crane is, and at all relevant times has been, a Chapter 7 trustee in this District.

22.     Upon information and belief, under Crane's contract with BMS, Crane promised (i) to deposit with Rabobank all, or substantially all, of the funds of any bankruptcy estate for which he used the Support Services of BMS, and (ii) to allow Rabobank to automatically withdraw, without any approval of the bankruptcy court or notice to creditors, a monthly fee from his bankruptcy estate accounts at Rabobank.

23.      Upon information and belief, Rabobank thereafter entered into a contract with Crane.

24.     Upon information and belief, Crane's contract with Rabobank authorized Rabobank to automatically withdraw, without any approval of the Bankruptcy Court or notice to creditors, a monthly fee from the bankruptcy estate accounts.

E.  The Chapter 7 Petition of Integrated Genomics, Inc.

25.     On May 4, 2011, Integrated Genomics, Inc. ("Integrated") filed in the Bankruptcy Court for this District, as Case No. 11-19086, a petition under Chapter 7 of the Bankruptcy Code.

26.     Upon the filing of the petition of Integrated, the U.S. Trustee appointed Crane as the Chapter 7 Trustee of the Estate of Integrated.

27.     On or before March 24, 2014, Crane deposited the funds of the Estate of Integrated at Rabobank.

28.     Prior to the closing of the Integrated bankruptcy case, Rabobank deducted $514.16 from this account.

29.     Rabobank never paid any interest on the funds in the account of the Estate of Integrated.

30.      McGarry received $12,472.55 in connection with the distribution of the funds of the Estate of Integrated.

31.     Crane filed his final account and distribution report on April 14, 2014, thereby closing the case and ending the Estate of Integrated.

32.     McGarry thereafter learned that Rabobank had deducted $514.16 from the Estate's account as a fee, effectively creating a negative interest rate.

A CLAIM FOR RELIEF
(Violation of 12 U.S.C. § 1972)

33.     McGarry repeats the allegations in paragraphs 1 to 32 above with the same force and effect as if set forth in full.

A.    Violation of 12 U.S.C. § 1972.

34.    Upon information and belief, Rabobank has violated 12 U.S.C. § 1972 by furnishing Bankruptcy Banking Services to Crane only on the condition that Crane (i) deposit at Rabobank all, or substantially all, of the funds of bankruptcy estates under his control for which he used BMS Support Services, and (ii) not deposit any such funds with any provider of Bankruptcy Banking Services other than Rabobank.

35.    Rabobank has engaged in this violation of 12 U.S.C. § 1972, upon information and belief, based upon its contract with BMS, and the contract of BMS with Crane.

36.    Upon information and belief, in Rabobank's contract with BMS, BMS promised to enter into contracts with Bankruptcy Trustees that required the Bankruptcy Trustees to (i) to deposit at Rabobank all of the funds of a bankruptcy estate for which he or she uses BMS Support Services, and (ii) not deposit any such funds with any provider of Bankruptcy Banking Services other than Rabobank.

37.    BMS thereafter entered into contracts with Bankruptcy Trustees, including Crane, that required the Bankruptcy Trustees to whom BMS provides Support Services to deposit with Rabobank all the funds of bankruptcy estates for which the Bankruptcy Trustee uses Support Services. The standard contract between BMS and Bankruptcy Trustees provides:

> "**Client [bankruptcy trustee] shall maintain all or substantially all of its fiduciary balances related to engagements for which Clients utilizes the Software with (i) bank(s) designed by BMS** ("Bank") and (ii) financial institution(s) designed by BMS ("financial institution"), if purchasing securities as indicated in paragraph 8 below, until such time as Client informs BMS in writing objecting to a particular bank or financial institution." (Emphasis added.)

B      Standing.

38.    McGarry has suffered injury-in-fact as a result of the violation of 12 U.S.C. § 1972.

39.    McGarry suffered damage as a proximate result of the violation of 12 U.S.C. § 1972 and is within the zone of interests that 12 U.S.C. § 1972 seeks to protect. No one has sustained a more direct injury than McGarry as a result of Rabobank's violation of 12 U.S.C. § 1972.

C.     Injury to Business and Property.

40.    The Estate of Integrated passed along 100 percent of the damages to the creditors of the Estate of Integrated, including McGarry and Crane (as an administrative creditor), dollar for dollar.

D.     Amount of Damages.

41.    As a result of Rabobank's violation of 12 U.S.C. § 1972, McGarry has sustained damages in an amount to be determined by the trier of fact in this action.

42.    As a result of the activities of Rabobank in violation of 12 U.S.C. § 1972, McGarry is entitled to recover treble damages and attorneys' fees pursuant to 12 U.S.C. § 1975.

Class Action Allegations

43.    McGarry is bringing this action as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of itself and a class of persons similarly situated.

44.    The class is defined as persons who received, or are entitled to receive, proceeds of a Chapter 7 Estate that paid fees to Rabobank, excluding:

(a)    Bankruptcy Trustees who have a contract with Rabobank;

(b)     the judicial officers adjudicating this action and any members of their immediate families.

45.     The class is sufficiently numerous that joinder of all members is impracticable. Upon information and belief, the class comprises at least hundreds of persons.

46.     There are questions of law and fact common to the class. These questions include, among others:

(a)     Did the contracts that Rabobank entered into with BMS, and with Bankruptcy Trustees, given the contracts that BMS entered into with Bankruptcy Trustees, violate 12 U.S.C. § 1972?

(b)     What is the amount of damages caused by any unlawful restraint in the market for Bankruptcy Banking Services?

47.     The claims of McGarry are typical of the claims of the class.

48.     McGarry will fairly and adequately protect the interests of the class. The interests of McGarry are coincident with those of the remainder of the class.  McGarry is represented by competent counsel.

49.     The questions of law and fact common to the class members predominate over any questions affecting only individual members, and a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy.

50.     In addition, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Rabobank. Adjudications with respect to individual members of the class would, as a

practical matter, be dispositive of the interest of the other members not parties to the adjudications.

WHEREFORE, McGarry, individually and on behalf of those similarly situated, demands judgment against Rabobank:

(a)    Awarding judgment for compensatory damages in an amount to be determined by the trier of fact in this action;

(b)    Awarding judgment for treble damages;

(c)    Awarding costs, including attorneys' fees in this action; and

(d)    Granting such other and further relief as to the Court seems just and proper.

DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution of the United States, McGarry hereby demands a trial by jury of all issues that are so triable.

Dated:  June 8, 2016

/s/Marianne C. Holzhall
Marianne C. Holzhall (#6204057)
(mch@mcgarryllc.com)
120 North LaSalle Street, Suite 1100
Chicago, Illinois 60602
(312) 345-4600

Attorney for Plaintiff

Dunnegan & Scileppi LLC
350 Fifth Avenue
New York, New York 10118
(212) 332-8300,

Of Counsel.